FILED

JUN - 4 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

SUNTAG & FEUERSTEIN
A Professional Corporation
ABRAM S. FEUERSTEIN (State Bar No. 133775)
The Kress Building
20 N. Sutter Street, 4th Floor
Stockton, CA  95202
Telephone:  (209) 943-2004
Facsimile:  (209) 943-0905

Attorneys for
Larry Gray, Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 05-93275-D-7 |
| | Chapter 7 |
| LAURISSA NICOLE CHAMBERS, | |
| | ADV. NO. 07-09001-D |
| Debtor. | |
| ———————————————— | |
| LARRY GRAY, TRUSTEE, | PLAINTIFF'S PROPOSED |
| | FINDINGS OF FACT AND |
| Plaintiff, | CONCLUSIONS OF LAW |
| v. | TRIAL DATE:  May 17, 2007 |
| SEAN SMITH, | TIME:        10:00 am |
| | DEPT.:       D |
| Defendant. | |

A trial of this adversary matter was held on May 17, 2007.  Plaintiff Larry Gray, the Chapter 7 trustee (the "Plaintiff" of the "Trustee") of the bankruptcy estate of Laurissa Chambers (the "Debtor"), appeared with his attorney, Abram S. Feuerstein, Esq., of Suntag & Feuerstein.  The defendant Sean Smith (the "Defendant" or "Mr. Smith") appeared on his own

FINDINGS OF FACT AND CONCLUSIONS _____ SED)                    1

RECEIVED
May 25, 2007
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0000780505

behalf.

At the commencement of trial, the Defendant orally requested for the first time that the trial be continued so that he could consult with legal counsel and/or have legal representation during the trial. The Defendant failed to serve or file a motion at any time prior to the trial requesting such a continuance. The Court's March 29, 2007, Notice of and Order for Trial advised the parties that continuances of the trial date were disfavored, and would be granted only after a noticed hearing and upon a showing of good cause and or diligence in preparing for trial. The Defendant failed to comply with the requirements for requesting a continuance and, accordingly, the Court denied the request.

This adversary proceeding seeks various relief based upon a Court-approved settlement agreement (the "Settlement") entered into by and among the Plaintiff/Trustee, the Debtor, and the Defendant. Among other things, the Settlement required the Defendant to attempt to liquidate a motorcycle which, at the time of the Settlement, the Defendant represented to the Trustee that he owned. The bankruptcy estate had asserted an interest in the motorcycle by virtue of a pre-petition property dissolution judgment between the Debtor and Mr. Smith. Under the Settlement, if the Defendant was unable to sell the motorcycle by September 30, 2006, the Defendant was required to turn over the motorcycle to the Trustee for liquidation.

Plaintiff/Trustee seeks a decree of specific

performance requiring the Defendant to perform the Settlement by turning over the motorcycle to the Plaintiff.  Alternatively, the Plaintiff sought damages for breach of the Settlement by the Defendant.  At trial, in order to conform to the evidence and proof presented at trial, the Plaintiff orally moved to amend the complaint to state a claim for fraud pursuant to Federal Rule of Civil Procedure 15(b) as incorporated by Federal Rule of Bankruptcy Procedure 7015.  For the reasons stated on the record of the proceedings, the Court granted the motion.

Having considered the evidence and written and oral arguments, the Court concludes that the Plaintiff is entitled to a judgment for specific performance.  If performance of the contract has been rendered impossible by the actions of the Defendant in transferring the motorcycle, Plaintiff shall be entitled to a judgment for damages for fraud.

I.  JURISDICTION

1.  This Court has jurisdiction over this action.  28 U.S.C. Secs. 157(a) & 1334(b).  The Plaintiff has asserted that the proceeding is a core proceeding in which the bankruptcy judge may enter final orders or judgments.  [See Complaint, Par. 2].  The Defendant has consented to the entry of final orders or judgments by the bankruptcy judge.  [See Defendant's Answer to Complaint, filed February 8, 2007, Par. 14].  The Settlement itself also provides that all disputes relating to the terms of the Settlement shall be resolved by the Court.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                    3

## II.  PRELIMINARY MATTERS

2.  The complaint as filed contains three claims for relief relating to the Defendant's alleged lack of performance under a Settlement Agreement that the Court approved on or about July 26, 2006.  At trial, the Plaintiff dismissed the turnover claim for relief.  However, at trial, to conform the pleadings to the evidence and proof, the Plaintiff orally moved to amend the complaint to state a claim for fraud pursuant to Federal Rule of Civil Procedure 15(b) as incorporated by Federal Rule of Bankruptcy Procedure 7015.  The Court granted the motion.  The Plaintiff alleges that under the Settlement the Defendant was required to turn over a Harley Davidson Motorcycle, which the Defendant represented was in the Defendant's possession when he entered the Settlement, to the Plaintiff by September 30, 2006, and that the Defendant failed to do so in breach of the Settlement.

3.  The plaintiff has the burden of proving all aspects essential to the claims for relief that he is asserting by a preponderance of the evidence.  [See generally, Director, Office of Worker's Comp. Programs, Dept. of Labor v. Greenwich Collieries (1994) 512 U.S. 267, 275; see also, California Evidence Code Sections 115, 500].

4.  The complaint was filed on or about January 5, 2007.  The Court conducted a status conference on March 29, 2007. At the conclusion of the status conference, the Court issued a Notice of and Order for Trial (the "Scheduling Order").  The

Scheduling Order required the parties to exchange Alternate Direct Testimony Declaration and Trial Exhibits pursuant to the time periods set forth in Local Rule 9017-1. The Plaintiff served and lodged with the Court the Alternate Direct Testimony Declarations of Laurissa Chambers (the "Chambers Declaration") and Abram S. Feuerstein (the "Feuerstein Declaration"), as well as Trial Exhibits 1 through 5. The Defendant did not serve or lodge with the Court any Alternate Direct Testimony Declarations or Trial Exhibits. Upon the motion of Plaintiff, Plaintiff's Trial Exhibits and Alternate Direct Testimony Declarations were admitted into evidence.

III. <u>FINDINGS OF FACT</u>

5. The Debtor filed a voluntary Chapter 7 bankruptcy petition on October 14, 2005, in the Modesto Division of the Bankruptcy Court of the Eastern District of California (the "Court"). Larry Gray is the Chapter 7 Trustee of the Debtor's bankruptcy estate.

6. The Defendant, Mr. Smith is the ex-spouse of the Debtor.

7. During his administration of the Bankruptcy Case, the Debtor informed Trustee that she was owed money by Mr. Smith under a marital dissolution judgment dated January 12, 2005 (the "Judgment"), including a $25,000 equalizing payment (the "Equalizing Payment"), and spousal and child support.

8. The Debtor also informed Trustee of the existence of a bank account (the "Bank Account") at Guaranty Bank (the

"Bank"). Debtor contended that the money in the Bank Account, about $14,600, was from the liquidation of personal property, including a 2001 Mastercraft Boat (the "Boat") and a 1999 Harley Davidson Motorcycle that Mr. Smith was required to liquidate in order to satisfy his obligations under the Judgment. After the bankruptcy case, Trustee made a demand on the Bank for the turnover of the money in the Bank Account, and the Bank froze the account.

9. Mr. Smith denied that he owed the full amount of the Past Due Spousal Support and the Past Due Child Support. He further denied that he was required to liquidate the Boat and the 1999 Harley Davidson Motorcycle to satisfy the Judgment. Mr. Smith acknowledged that he had liquidated the Boat and deposited the funds in the bank, but informed the Trustee that he still possessed a 1999 Harley Davidson Motorcycle (the "Motorcycle" or the "Harley").[1] Mr. Smith asserted that the Trustee acted improperly in making a demand on the Bank for the turnover of the money in the Bank Account.

10. The Trustee, Mr. Smith and the Debtor entered into a Settlement Agreement and Mutual Release (the "Settlement"). The Settlement provided, among other things, for the division of the money in the Bank Account and for the orderly liquidation of

---

[1] At trial, Mr. Smith testified that he had two 1999 Harley Davidson Motorcycles. He testified that he owned a 1999 Harley at the time of the Judgment, but said that that motorcycle had been stolen. He testified that he purchased a second 1999 Harley Davidson motorcycle, for an amount in excess of $10,000, after the first motorcycle was stolen. The distinction between the motorcycles is not relevant to the lawsuit in that, at the time of the Settlement, Mr. Smith represented to the Trustee that he owned a 1999 Harley.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                    6

the Motorcycle.

11.   At trial, Mr. Smith testified that he could not remember what he paid for the Motorcycle, although he admitted that it was an amount over $10,000.  However, in the negotiations involving the Settlement, Mr. Smith stated that the value of the Motorcycle was approximately $15,000.  In fact, in the Settlement, Mr. Smith was given the option to purchase the Motorcycle at a price of $15,500, an amount which he agreed represented the value of the Motorcycle as of the date of the Settlement.  Initially, Mr. Smith would be charged with selling the Motorcycle by September 30, 2006 (the "Deadline") for a minimum sales price of $18,000, keeping the Motorcycle insured through the Deadline.  To the extent that Mr. Smith incurred expenses in repairing and readying the Motorcycle for sale (the "Expenses"), upon a sale, after accounting for the Expenses, Mr. Smith would be entitled to deduct the Expenses from the sales proceeds.  Mr. Smith would also be entitled to a commission of 17 percent of the sales proceeds of the Motorcycle net of the Expenses.

12.   In the event Mr. Smith was unable to sell the Motorcycle for the $18,000 minimum sales price by the Deadline, the Settlement required that he turn over the Motorcycle immediately to Trustee.  Upon a sale by Trustee, Mr. Smith would be entitled to reimbursement for the Expenses, but would forfeit any right to a commission.

13.   In entering into the Settlement, the Trustee

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                     7

relinquished various rights, including but not limited to the right to pursue the collection of estate property, including the Equalizing Payment, back spousal support, and/or child support, as well as the ability to enforce the estate's property rights from the full amount of funds in the Bank Account and/or other assets owned, or income to be earned, by the Defendant.

14.   After a notice and hearing in the Bankruptcy Case, on or about July 26, 2006, the Court approved the Settlement.

15.   Upon the expiration of the Deadline, the Trustee through his legal counsel, Abram S. Feuerstein, contacted Mr. Smith to determine the status of the Motorcycle. Mr. Smith informed the Trustee that he had not been able to locate a purchaser for the Motorcycle. On behalf of the Trustee, Mr. Feuerstein demanded that Mr. Smith turn over the Motorcycle to the Trustee, but Mr. Smith refused, and continues to refuse, to turn over the Motorcycle.

16.   Shortly after the expiration of the Deadline, Mr. Smith stated to Mr. Feuerstein that he needed more time to sell the Harley. He admitted to Mr. Feuerstein that he had not yet had the opportunity to complete the work on the Harley to prepare it for sale because he said he did not have the money to do so as a result of a downturn in his business. Apparently, Mr. Smith performed mortgage services for World Savings Bank. Mr. Smith told Mr. Feuerstein that the mortgage business had been extremely slow. Mr. Smith told Mr. Feuerstein that the Trustee should not seek to enforce the Settlement and obtain the Harley but should,

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                          8

contract;

       (c) Plaintiff's performance, tender, or excuse for nonperformance;

       (d) Defendant's breach; and

       (e) Inadequacy of the remedy at law.

[See generally, 5 Witkin, California Procedure 4th, Pleading, Sec. 741 (1997)].

    24. The elements for specific performance are satisfied under the facts and circumstances of this case.

    a. <u>The Contract</u>. The Court-approved Settlement is a contract that is specifically enforceable contract that is sufficiently certain in its terms. The performance obligations of the parties are unambiguous and clear. In clear and unambiguous terms, in the event that the Defendant was unable to sell the Motorcycle, the Defendant was required to turn over the Motorcycle to the Trustee by September 30, 2006. That deadline lapsed, and the Defendant failed to perform.

    b. <u>Consideration</u>. The Settlement was supported by adequate consideration, including the division of money in the Guaranty bank account among the estate, the Debtor, and Mr. Smith; the compensation and reimbursement of expenses Mr. Smith would be entitled to receive if he sold the Motorcycle; and the three-way mutual release entered into by the parties. Indeed, among other things, under the Settlement, Mr. Smith was obtaining the release of his obligations under the Judgment, including the payment of an equalizing payment to his ex-spouse.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)      11

c.  <u>Plaintiff's Performance</u>.  Plaintiff performed its
obligations under the Settlement.  Any lack of performance, <u>i.e.</u>,
the payment of repair expenses owed to Mr. Smith, are properly
excused in that Mr. Smith did not account for any such expenses to
the Trustee as required by the Settlement, and Mr. Smith admitted
to the Trustee's legal counsel in October 2006 that he had not yet
made the repairs necessary to sell the Motorcycle.  Moreover, Mr.
Smith has not submitted any evidence in the form of Alternate
Direct Testimony Declarations or Trial Exhibits to support such
repair expenses.

d.  <u>Breach</u>.  Mr. Smith failed to perform the Settlement
and turn over the Motorcycle by the September 30, 2006, deadline.

e.  <u>Inadequacy of Remedy</u>.  There is an inadequate remedy
at law in that the Motorcycle is a custom cycle that has been
outfitted with after market parts.  Ascertaining the value of the
Motorcycle and determining the market for the Motorcycle would be
difficult given its custom nature.  Representations made by Mr.
Smith assign a value range of $15,000 to $40,000 to the
Motorcycle.  In his Answer, Mr. Smith has not denied that the
Motorcycle is unique in that it had substantial work and
modifications to it, nor has he denied that ascertaining the
market value of the Motorcycle would be difficult to ascertain.

25.  Accordingly, the Plaintiff is entitled to a decree
for specific performance ordering the Defendant a) to transfer
title to the Motorcycle immediately to the Trustee and b) to turn
over physical possession of the Motorcycle to the Trustee

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                    12

immediately.

B.    BREACH OF CONTRACT

26.    In the event that Mr. Smith transferred the Motorcycle after entering the Settlement and no longer has any interest in the Motorcycle, thereby rendering specific performance impossible, subject to an election of remedies made by Plaintiff, Plaintiff has demonstrated that he is entitled to judgment for damages for breach of contract by a preponderance of the evidence.

27.    Breach of contract requires the following elements be established by Plaintiff.

a.    The existence of a contract;

b.    Plaintiff's performance or excuse for non-performance;

c.    Defendant's breach; and

d.    Damage to Plaintiff.

[See generally, 5 Witkin, California Procedure 4th, Pleading, Sec. 476 (1997)].

28.    The Plaintiff has established the foregoing elements.

a.    Existence of Contract.  The Court-approved Settlement, which was executed by Mr. Smith, the Debtor, and the Trustee, is a written contract.  The terms were negotiated by Mr. Smith, including compensation and reimbursement terms, purchase options, and the deadlines by which Mr. Smith was required to tender performance.

b.    Plaintiff's performance.  Plaintiff performed all of

its obligations under the Settlement or, any performance by Plaintiff was excused by Mr. Smith's failure to comply with Mr. Smith's obligations under the Settlement.

     c.  <u>Defendant's breach</u>.  Defendant breached the contract by failing to turn over the Motorcycle by the September 30, 2006, deadline.

     d.  <u>Damages</u>.  Plaintiff has been damaged in the amount of the value of the Motorcycle.  The evidence, including Defendant's admissions to the Trustee concerning the value of the Motorcycle, establishes that the Motorcycle had a value of at least $15,000 in its condition as of the Settlement.  Plaintiff has waived any claim for damages for breach of contract in excess of $15,000, exclusive of attorney's fees and costs.  Accordingly, Plaintiff is entitled to an award of $15,000, exclusive of attorney's fees and costs.

     C.  <u>FRAUD</u>

     29.  In the event that the Motorcycle was transferred by the Defendant prior to the Settlement thereby rendering specific performance impossible, the plaintiff has established the elements of fraud by a preponderance of the evidence.

     30.  The elements of fraud include:

     a.  A representation;

     b.  Falisty;

     c.  Knowledge of falsity;

     d.  Intent to Deceive; and

     e.  Reliance and resulting damage.

[See Barron Estate Co. v. Woodruff Co. (1912) 163 Cal. 561].

31.  Plaintiff has established the foregoing elements of fraud, as follows:

a.  <u>Representation</u>.  The Defendant represented that he owned the Motorcycle as of the date of the Settlement;

b.  <u>Falsity</u>.  The Defendant testified that he lied to the Trustee and the Trustee's legal counsel in representing that the Defendant owned the Motorcycle as of the date of the Settlement;

c.  <u>Knowledge of Falsity</u>.  The Defendant knew the representations concerning his ownership of the Motorcycle were false when he made the representations;

d.  <u>Intent to Deceive</u>.  The Defendant intended to deceive the Trustee when the Defendant represented that he owned the Motorcycle; and

e.  <u>Reliance and Resulting Damage</u>.  The Trustee relied upon the Defendant's representations concerning the motorcycle. The Defendant admitted at trial that he understood the Trustee was relying upon the false representations.  The Trustee was entitled to rely, and was justified in relying, upon the representations by the Defendant that he owned the Motorcycle.  The estate incurred damages as a result of the Defendants' conduct (the "Fraud Damages"), including administrative expenses incurred in negotiating the Settlement, obtaining Court approval for the Settlement, and enforcing the Settlement; relinquishing claims to funds in the Bank Account; and foregoing other opportunities to

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                    15

recover the value of the Motorcycle for the estate and enforce the

Defendant's obligation to pay the Equalizing Payment, child

support, and spousal support, under the Judgment.  The Court will

schedule further proceedings to determine the amount of the Fraud

Damages.

32.  ~~The Defendant acted in bad faith and with malice in~~

~~making the false representations concerning his ownership of the~~  RSB

~~Motorcycle, entitling the Plaintiff to an award of punitive~~

~~damages.~~  The ~~Court will~~ *Plaintiff may* schedule further proceedings, *if they believe*
*they are entitled to* ~~to determine~~

~~the amount of~~ punitive damages ~~to be awarded.~~

33.  The remedies for breach of contract and/or fraud

are alternative remedies.  At the time of the submission of

proposed findings of fact and conclusions of law, in the event

that the Defendant's actions have rendered specific performance

impossible because the Defendant no longer has title to and

physical possession of the Motorcycle, Plaintiff has elected the

tort remedy of fraud.

D.  <u>ATTORNEY'S FEES AND COSTS</u>

34.  Under California Civil Code Section 1717, in any

action on a contract, where the contract specifically provides for

attorney's fees and costs incurred to enforce the contract, the

prevailing party is entitled to an award of reasonable attorney's

fees as an element of costs of suit.  Plaintiff is entitled to an

award of reasonable attorney's fees and costs with respect to

Plaintiff's claim for specific performance.  The Court will

schedule further proceedings to establish the attorney's fees

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                         16

instead, seek to administer other assets owned by Ms. Chambers.

17.  The Motorcycle represents unique personal property in that it is a custom motorcycle that has been completely outfitted with custom, after market parts.  Although upon entering into the Settlement, Mr. Smith stated that the Motorcycle had a value of at least $15,000, he has boasted to various people, including the Debtor and relatives of the Debtor, that upon a sale he might be able to receive $40,000 for the Motorcycle.

18.  At trial, Mr. Smith testified that he had sold the Motorcycle in December 2005 to a third party for the sum of $8,000; that he lied to the Trustee and the Trustee's legal counsel in representing that he owned the Motorcycle as of the date of the Settlement; and that he lied to the Trustee's legal counsel in October 2006 when he stated that he needed additional time to sell the Motorcycle.  The Defendant admitted that he understood the Trustee was relying on the Defendant's false representations in entering into the Settlement.  The Defendant testified that after December 2005, he did not have any interest whatsoever in the Motorcycle, and that the only motorcycle in which he maintained an interest is a small dirt bike.

19.  Given Mr. Smith's prior representations to the Trustee over a lengthy period of time that he owned the Motorcycle, the Court is unable to determine whether Mr. Smith's testimony at trial was truthful.  ~~If Mr. Smith's testimony at trial is in fact accurate, and he no longer had an interest in~~  *RSB*

~~the Motorcycle at the time he entered the Settlement, the~~
~~Defendant's conduct in making false representations to the~~ *RSB*
~~Trustee and the Trustee's legal counsel concerning his ownership~~
~~of the Motorcycle was undertaken in bad faith and with malice.~~

20.   Paragraph 12 of the Settlement provides that in
the event of a breach of the Settlement by another party to the
Settlement, the breaching party will pay reasonable attorney's
fees and costs of the non-breaching party incurred by reason of
said breach.

21.   The Bankruptcy Estate has incurred administrative
expenses (the "Administrative Expenses"), including the fees and
expenses of the Trustee and his legal counsel, in negotiated the
Settlement, obtaining Court approval for the Settlement, and in
enforcing the Settlement.

IV.   CONCLUSIONS OF LAW

22.   The plaintiff has met his burden of proof by a
preponderance of evidence and established that he is entitled to
judgment for specific performance or, if performance of the
contract has been rendered impossible, for damages for breach of
contract and/or fraud.

A.   SPECIFIC PERFORMANCE

23.   The elements of specific performance include:

(a) The making of a specifically enforceable type of
contract, sufficiently certain in its terms;

(b) Adequate consideration, and a just and reasonable

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                            10

1    reasonably incurred by Plaintiff to enforce the Settlement.

2          35.   Plaintiff is entitled to an award of costs,    *R SB*

3    including filing fees of $250.  The ~~Court will~~ *Plaintiff may* schedule further

4    proceedings *seeking the court* to establish Plaintiff's ~~costs~~ *entitlement to attorney's fees*.

5

     DATED:    JUN - 4 2007

6                                    By the Court

7

8                                    *Robert Bardwil*
                                     ─────────────────────
9                                    Hon. Robert S. Bardwil
                                     United States Bankruptcy Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FINDINGS OF FACT AND CONCLUSIONS
OF LAW (PROPOSED)                      17